Ralph Murphy v. Commissioner.
Murphy v. Commissioner
Docket No. 9851.
United States Tax Court
1948 Tax Ct. Memo LEXIS 259; 7 T.C.M. (CCH) 35; T.C.M. (RIA) 48009; January 30, 1948
*259 Neil D. McCarthy, Esq., and Charles R. Thompson, Esq., 1117 Associated Realty Bldg., 510 W. 6th St., Los Angeles 14, Calief., for the petitioner. A. J. Hurley, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding was brought for a redetermination of a deficiency of $2,145.72 in petitioner's income tax for the calendar year 1941. Respondent has denied petitioner a deduction of $6,900 for that year, which petitioner claims as a loss on discovery of embezzlement in 1941, or, alternatively, as a bad debt deduction. Petitioner has reduced the amount involved to $3,173.68 by crediting against the claim payments made by the embezzler. Findings of Fact Petitioner resides at Los Angeles, California, and filed his return for the period in question with the collector for the sixth district of California. Petitioner purchased 1,000 shares of Universal Pictures Corporation stock on November 17, 1936, at $8 per share, for a total sum of $8,000. Before leaving on an extended trip to Europe, he endorsed this stock and turned it over to his business manager, Pirschel, in February or March, 1937, with instructions to sell *260 the stock for him if the market reached the price that petitioner had paid for it. Petitioner's trip was delayed until August or September of 1937, and he reinstructed Pirschel to the same effect. The business manager, Pirschel, embezzled the stock by appropriating the stock to his own use and selling it during the years 1937 and 1939, and used the money received from the sale for his own use. The dates of sales, the number of shares sold, and the price received per share were as follows: Price Per
Number of
Share in
Date of Sale
Shares Sold
Dollars
April 22, 1937
100
8
January 19, 1939
100
4 1/8
February 3,1939
100
4
June 28, 1939
200
3 1/2
August 1, 1939
100
3 3/4
August 24, 1939
100
3 1/2
September 28, 1939
200
3
About the first part of February, 1941, the stock again reached a point on the market near the price paid for it by petitioner, and petitioner then instructed Pirschel to produce the stock, as petitioner desired to sell one-half of it. Upon receiving excuses from Pirschel, petitioner turned the matter over to his attorney, Austin Sherman. Pirschel then admitted to Sherman in the early part of February, 1941, that he *261 had embezzled the stock. Pirschel then stated to petitioner that he very much regretted his misconduct and would do his best to make restitution. In about 1944 petitioner's counsel inquired of E. F. Hutton & Co. if they could have the information on Pirschel's account which would show the time of embezzlement. They were advised that authorization would have to be given by Pirschel. Pirschel never signed the authorization form they sent him. Petitioner at no time from the time he turned the stock over to Pirschel in 1937 until he discovered the embezzlement thereof in 1941 discussed the stock with Pirschel, except to reinstruct him before he left in the fall. Pirschel paid petitioner at the time of the discovery of embezzlement $1,100 in cash. He also gave him a trust deed note in the amount of $2,500 secured by a second trust deed on real property which was or had been Pirschel's home, an assignment of an account owing to him by Walter Cain; an assignment of an indebtedness owing to him by William Rankin, and an assignment of $15 per week out of his salary. The Cain and Rankin accounts were subsequently found to be worthless; nothing could be collected from Rankin during 1941; *262 an attempt to collect from Walter Cain was not successful. Their figures indicated that Pirschel owed them more than he was supposed to have owing to him. Petitioner's attorney did not believe that if suit was filed against Pirschel in 1941 petitioner would at that time have recovered any more than they had already received. He was unable to state the fair market value of the real property against which Pirschel gave the second trust note. Subsequent to the discovery of the embezzlement and the payment of $1,100 cash by Pirschel, Pirschel paid to petitioner the following amounts: 1941
$ 105.00
1942
65.00
1943
150.00
1946
3,261.67
1947
144.65
A book account relating to the Pirschel matter was set up in the office of petitioner's attorney to which the periodic payments made by Pirschel on account were credited. As indicated above, Pirschel continued to make payments on account until the year 1944 when the payments lapsed. In 1946 petitioner brought suit against Pirschel on the account and recovered the sum of $3,261.67. At that time Pirschel entered into a new agreement with petitioner in which he promised to pay the remaining balance of $3,000. Petitioner *263 continued to receive payments on account of the balance up to and including the year 1947. In his return for 1941 petitioner took a deduction of $6,900 as a loss occasioned by "Funds Misappropriated by Business Manager." Opinion If the rule is as stated in petitioner's own brief that "A loss due to embezzlement cannot occur until the discovery of the embezzlement, and the failure of the embezzler to make restitution" (emphasis [italics] added), then it seems obvious that the time has not yet arrived when the loss and its amount are so definitely ascertainable that the deduction should be allowed. Glenn v. Louisville Trust Co. (C.C.A., 6th Cir.), . Petitioner has received periodic payments in diminution of his loss in almost every year since its claimed discovery, up to the time of the hearing; and there is nothing to demonstrate that such payments will not continue. Even if petitioner's statement of the rule should be incorrect, selection of the tax year before us for deduction of the loss cannot be supported. The embezzlements are shown to have taken place in prior years, see , *264 and although, to be sure, the instant year represents the date of petitioner's claimed discovery of the embezzlement, the scope of petitioner's loss or the worthlessness of the embezzler's debt to him was not and could not then have been established. Even without resorting to the subsequent history of the transaction, the situation in 1941 was that the embezzler had some interest in property of an indeterminate value upon which he then actually gave petitioner a lien, and that he was apparently in receipt of income, of which he assigned a future portion to petitioner. There is certainly no showing of what petitioner's own brief states to be required, that "It follows, therefore, that the loss is not sustained until the discovery by the person embezzled and the concomitant inability of the embezzler to make restitution." See . Assuming further that undiscovered embezzlements may occasionally be deducted in the year of discovery, cf. , and without attempting to decide the point here, we know of no authority extending the principle so far that a taxpayer who could have discovered the loss *265 by the use of due diligence is equally protected. Cf. . Here it is shown that after petitioner's instructions were given and prior to his stated reiteration of them, the event specified for sale of the stock had, indeed, occurred and in that very year - 1937 - it should have been evident to a sufficiently alert principal that his instructions had already been disregarded. No circumstance appears in the record to account for petitioner's contemporary unawareness of this apparent breach of trust. Finally, the fear that petitioner will be deprived of the deduction unless sustained in his present claim is difficult to support. The debt due him from the embezzler was, as we have already noted, clearly collectible in part. It could as a consequence have been no more than partially worthless. [1] While we are not persuaded that it was uncollectible at all, and certainly not of the extent of its uncollectibility, the significance of this aspect is that a failure by a taxpayer to deduct in one year for a partially worthless debt does not deprive him of the opportunity to take his deduction in another *266 upon subsequent ascertainment of total worthlessness. . For the reasons stated, we view respondent's action as correct. Decision will be entered for the respondent. Footnotes
1. Petitioner himself says: "* * * the said debt became partially worthless during said taxable year in the amount Pirschel [the embezzler] was unable to repay." The amount "Pirschel was unable to repay" was, as we have said, apparently problematical in the year of discovery, and, for all that appears, remains so to this day.↩